No. 18,469.

FRANK PRINSTER, JR., ET AL. *v.* DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT.

(325 P. [2d] 938)

Decided May 19, 1958.    Rehearing denied June 9, 1958.

Messrs. SMITH, HOLMES & WILLIAMS, Messrs. HAYNIE & HOTCHKISS, Mr. JAMES GOLDEN, Mr. EUGENE H. MAST, Mr. GERALD J. ASHBY, Mr. WARREN F. REAMS, Messrs. ADAMS, HECKMAN, TRAYLOR & ELA, for plaintiffs.

Mr. E. B. UNDERHILL, for respondents.

Messrs. MOSES & DESOUCHET, Mr. CHARLES E. SABIN, Mr. RANGER ROGERS, Amici Curiae.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THIS is an original proceeding in the nature of prohibition.

In 1948 the District Court of Mesa County entered

its decree in a general water adjudication proceeding and granted decreed priorities to *eighteen claimants* for the use of water from an alleged aquifer for domestic purposes. That decree became final nearly ten years ago. No review thereof has ever been sought in the trial court or this court. On January 8, 1957, eight of the above mentioned claimants, who were decreed priorities in the 1948 adjudication proceedings, commenced an action in the District Court of Mesa County, Civil Action No. 10599, naming as defendants (1) twenty-eight persons or firms, none of whom had any decreed rights, but who it is alleged have wells and are taking water from the aforesaid aquifer; (2) ten of the above mentioned *eighteen claimants*, decreed owners of water, who refused to join as parties plaintiff and were therefore made parties defendant; (3) three water officials of the state of Colorado, and (4) all unknown persons who claim any interest in the subject matter of the action.

The purpose of the action was to (1) obtain a mandatory injunction requiring the state engineer and his deputies to recognize and enforce the 1948 decree; (2) to enjoin those defendants who had no decreed rights from diverting water from the aquifer, and (3) to require the owners of all wells taking water from the aquifer to properly cement and equip them to the end that water not be wasted and lost.

A motion to dismiss the action was filed in behalf of "the defendants herein who are represented by their respective attorneys." The record does not disclose who of several defendants joined in the motion.

The reason assigned for dismissal is:

"That this Court has no jurisdiction of said supposed cause of action set forth in the Complaint herein for the reason that the purported decree of this Court of August 23, 1948, * * * was null and void and without the powers of this Court *under the Constitution and Statutes of this State.*" (Emphasis supplied.)

The attorney general, in behalf of the three state

officials, filed a motion to dismiss and assigned as reason therefor: "* * * the complaint does not state a claim against these defendants upon which relief may be granted."

On May 25, 1957, Judge Hughes denied defendants' motions and granted them twenty days to answer, and on October 7, 1957, denied the motion to dismiss filed in behalf of the state officials and at that time ordered all defendants to "* * * answer within ten days from the receipt of this Order, *unless some Defendant desires to stand on Motion to Dismiss* and if so, a written statement to that effect be filed with the Court within said ten-day period." (Emphasis supplied.)

None of the defendants elected to stand on their motions to dismiss and none answered.

On November 12, 1957, *eighteen* of the *thirty-nine* defendants in Civil Action No. 10,599 filed their complaint in this court naming as defendants The District Court of the Seventh Judicial District and the Honorable Dan H. Hughes, a Judge thereof; the complaint is "for writ in the nature of prohibition." Plaintiffs pray: "* * * that a citation issue out of this Court directed to the District Court for the Seventh Judicial District of the State of Colorado, and Honorable Dan H. Hughes, the Judge thereof, to show cause, if any there be, within a time limited by this Court, *why they and each of them should not be prohibited from proceeding further in the same action No. 10,599,* entitled *M. Humphries, et al., v. C. Welby Schrader, et al.*" (Emphasis supplied.)

On November 27, 1957, this court entered its order directed to the defendants herein to: "* * * answer and show cause within thirty days from service hereof why the relief requested in the prayer of said complaint shall not be allowed."

The defendants answered and put in issue the question of the validity of the 1948 decree, briefs have been filed and oral argument had. None of the parties before

us have raised objection to this proceeding by prohibition.

Admittedly, this matter if of great importance to the parties involved, and no doubt further litigation in the district court will prove expensive. That fact, however, does not constitute sufficient reason for us to disregard the rules of procedure, decide questions not before us, divest a district judge of all authority to determine issues properly before him, and adjudicate rights of parties not before us.

There can be no question that Judge Hughes had jurisdiction of the parties, no question that he has general legal and equitable jurisdiction, including the right and duty to grant or deny injunctive relief. He had jurisdiction to pass upon all motions presented, including the motions to dismiss the complaint. Plaintiffs here, all of whom were defendants before Judge Hughes, are in no position to question, and do not question, Judge Hughes' jurisdiction to rule on their motions, provided he rule correctly as they view the matter. In any event, he did rule; he did grant the parties time to answer; that ruling remains in full force and effect. This court has not undertaken to vacate the ruling and in this proceeding should not order Judge Hughes to vacate the order or take any affirmative action.

"The remedy by prohibition is primarily preventive or restraining, not corrective, and only incidentally remedial in the sense of giving relief to parties.

"* * * Its principal purpose at the present time is to prevent an encroachment, excess, usurpation, or assumption of jurisdiction on the part of an inferior court or tribunal, or, it has been said, to prevent some great outrage upon the settled principles of law and procedure, in cases where wrong, damage, and injustice are likely to follow from such action. * * *." — 42 Am. Jur. 140-141, §5.

The complaint herein states that the action is brought pursuant to R.C.P. 106 (a) (4). The rule provides:

"(a) * * * In the following cases relief may be obtained by appropriate action or by an appropriate motion under the practice prescribed in these rules:

* * *

(4) Where an inferior tribunal * * * has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy. * * * *Review shall not be extended further than to determine whether the inferior tribunal (1) has exceeded its jurdiction or (2) abused its discretion.*" (Numbers and emphasis supplied.)

The individual defendants in their motion to dismiss purport to appear *specially* for the purpose of the motion only. They set forth that Judge Hughes had no jurisdiction of the subject matter of the action in that the 1948 decree of Judge Littler is void.

Judge Hughes is charged with the duty of determining the rights and liabilities of all parties appearing in or brought into his court. In the district court the plaintiffs filed their complaint seeking relief against the defendants, all of whom were properly before him. Judge Hughes proceeded in an orderly way; he considered plaintiffs' complaint and defendants' motion to dismiss. Defendants recognized Judge Hughes' jurisdiction when they asked him to dismiss the complaint; the fact that he denied the motion rather than to sustain it does not go to the question of jurisdiction. The real complaint of plaintiffs here is that Judge Hughes erroneously denied their motion. If his ruling was erroneous, that ruling can ultimately be reviewed here by writ of error.

Were we to make the rule absolute, we would create an anomalous situation indeed. Plaintiffs in Judge Hughes' court are armed with decrees for the use of water, decrees that never have been set aside or even attacked prior to the motion to dismiss in Civil Action No. 10,599. They are armed with an order of Judge Hughes denying defendants' motion to dismiss, the effect

of that order being that plaintiffs have stated a claim entitling them to relief against defendants, and yet Judge Hughes would be enjoined from taking any further steps in the case, plaintiffs could not seek relief in any other court and they would be left with prima facie valid adjudicated rights and no remedy.

Significantly none of the *ten defendants* in Civil Action No. 10,599 *who have decreed rights* appear as plaintiffs here. The fact that these ten decreed owners refused to become parties plaintiff seeking injunctive relief does not mean that they consider their decrees invalid. Were the rule here to be made absolute, these defendants would remain parties to the action before Judge Hughes, an action that would forever remain pending and undetermined, because of a judgment here, prohibiting further proceedings, a determination to which they are not parties.

██ Plaintiffs in the action before Judge Hughes, as well as the defendants who have decreed rights, who enjoyed favorable rulings at the hands of Judge Hughes, are not parties to the proceeding before us and, not being before us, we are in no position to adjudicate their rights.

██ Prohibition may never be used to restrain a trial court having jurisdiction of the parties and of the subject matter from proceeding to a final conclusion. Nor may it be used to restrain a trial court from committing error in deciding a question properly before it; it may not be used in lieu of a writ of error.

In 42 Am. Jur. 165, §30, we find the following language:

"It is the universal rule that mere error, irregularity, or mistake in the proceedings of a court having jurisdiction does not justify a resort to the extraordinary remedy by prohibition, and that a writ of prohibition never issues to restrain a lower tribunal from committing mere error in deciding a question properly before it; or, as it has sometimes been said, the writ of prohibition

cannot be converted into, or made to serve the purpose of, an appeal, writ of error, or writ of review to undo what already has been done. * * * Thus, when jurisdiction is clear, an erroneous decision in ruling on the sufficiency of the petition or complaint, or on a motion to dismiss, * * * is not ground for a writ of prohibition. * * *."

The following language from *Valas v. District Court,* 130 Colo. 21, 273 P. (2d) 1017, quoted in *Meaker v. District Court,* 134 Colo. 151, 300 P. (2d) 805, is equally applicable to the facts in the case before us: "* * * the validity of the questioned order can be challenged and defendants in that action will be afforded full opportunity to justify their failure or refusal to comply therewith. If, by any judgment entered by the trial court in those proceedings, the tenants feel aggrieved, their remedy by writ of error is speedy and altogether adequate for the protection of their rights, and there is no occasion for invoking the original jurisdiction of this Court."

In *In re Packer,* 18 Colo. 525, 33 Pac. 578, it is said: "* * * The district court having jurisdiction of the defendant, and jurisdiction of the offenses charged, when the application for the consolidation was presented, it had jurisdiction to determine that application. If it erred in its conclusion, such error in no way affected its jurisdiction. In other words, it had power to make an erroneous order as well as a correct one."

Ordinarily the delay and expense of a trial may not be urged as grounds for prohibition.

"* * * The delay and expense of an appeal or other available remedy ordinarily furnish no sufficient reasons for holding that the remedy by appeal is not adequate or speedy, although there are many instances in which the expense and delay of an appeal have, in part at least, impelled the superior court to grant the writ. * * *." — 42 Am. Jur. 145-146, §9.

We do not pass upon the validity of the 1948 decree,

nor upon the correctness of Judge Hughes' rulings on the motions to dismiss.

For the reasons above stated, the rule to show cause heretofore issued is discharged, defendants to recover their costs herein.

Mr. Justice Frantz specially concurs.

Mr. Justice Moore dissents.

Mr. Justice Frantz specially concurring:

The decree entered by the Hon. Paul L. Littler on August 23, 1948, adjudicating water rights based upon the doctrine of appropriation, found that "the water contained in these sands is not tributary to any *natural surface stream.*" (Emphasis supplied.) This finding does not negate the fact that such water may be tributary to a *natural* subsurface stream. If these waters are tributary to a natural subsurface stream, they are subject to the doctrine of appropriation. *Safranek v. Limon,* 123 Colo. 330, 228 P. (2d) 975.

Moreover, there is no finding in this decree that this was an aquifer and that the court was adjudicating water rights in an aquifer.

These are additional important reasons for my special concurrence. •

Mr. Justice Moore dissenting.

This is no ordinary lawsuit. In the majority opinion it is admitted that the question presented is one of great importance. Moreover it is admitted that "further litigation in the district court will prove expensive." This court, without a recorded dissent, ordered the issuance of a rule to show cause. Counsel for the parties were thus led to believe that we would resolve the controlling question as to whether the doctrine of appropriation (first in time, first in right) is applicable to nontributary underground waters. Counsel have prepared

their briefs, which are exhaustive and fully cover the field, in expectation of a determination of the question presented. Amici Curiae have been permitted to file briefs and thus the labors of counsel other than those representing the parties have been devoted to the question of law to be decided.

After several months of research and study devoted by counsel to a full and complete coverage of the controlling question, the majority opinion in effect states to the lawyers who have thus been misled by the court:

"Oh yes — we know the matter is of great importance. We know that if the controlling question is now answered in one way the ligitation would be ended; we know that by backing away from answering this question now we will compel the litigants to expend large sums of money in engineering work and other expensive operations all of which might be saved if we answered the question of substance at this time; we know that the question which every litigant in this case, as well as the trial court, has asked this court to decide must be the very first question which will ultimately have to be decided after all the additional time and money is spent, all of which might be utterly wasted depending upon the answer which we will be called upon to give to the identical question which is fully presented now. Yes — we know all these things. But we are so enmeshed in legal niceties that we are obliged to require you to go back to the place from whence you came and after you have invested additional months in time and thousands of dollars on the gamble that this court will answer the question in a particular way — then come back with the same arguments you have already prepared for us and we may then see fit to answer the question."

I believe that this court should tell these litigants and the trial courts of this state, *in this proceeding and at this time,* whether the doctrine of prior appropriation applies to nontributary underground waters. The liti-

gants ask for the answer, the trial court asks for the answer. Why not settle the question?

The majority opinion holds that none of the reasons which prompted counsel, all of whom are capable lawyers of many years unblemished standing at the bar of this court, to seek relief by the short and inexpensive procedure which they followed with the full approval of the trial court, constitutes "sufficient reason for us to disregard our rules of procedure, decide questions not before us, divest a district judge of all authority to determine issues properly before him, and adjudicate rights of parties not before us."

It is my firm belief that the instant case is exactly the kind in which we should, under the rules of procedure, save the time and money of the litigants, as well as that of the lawyers and of the trial courts, by answering the controlling question in the case now. If the doctrine of appropriation is applicable we should say so at this time. In that event the trial court would be correct and the litigants could proceed with full safety in determining the merits of the case on the premise that the doctrine of appropriation is applicable. If that doctrine is not applicable we should say so; and if that answer is given, the case for injunctive relief would fall and the action should be dismissed. In facing up to this controlling question now we would not "disregard our rules of civil procedure." We have stated that in matters of this kind this court has a wide discretion to act in the interests of speedy justice. *Kellner, et al. v. District Court,* 127 Colo. 320, 256 P. (2d) 887.

To my knowledge, we have not heretofore refused to determine the merits of questions presented by counsel in prohibition proceedings after accepting original jurisdiction and directing the rule to show cause to issue. We have decided the merits of controversies in original proceedings in matters of much less importance than those present in the instant case where it would have been possible to determine the issue on writ of error.

*Old Timers Association v. Housing Authority,* 122 Colo.
597, 224 P. (2d) 219; *Berger v. The People,* 123 Colo.
403, 231 P. (2d) 799.

In *People Ex Rel. v. Blake, et al.,* 128 Colo. 111, 260 P.
(2d) 592, we said: "Having entered appearance and pro-
test, in event of adverse judgment, review by writ of
error would be in order. Neither is this the only avenue
available where it is contended, as in this case, that the
county court was without or exceeded its jurisdiction, or
abused its discretion, since Rule 106 (a) (4) R.C.P. Colo.
'provides a plain, speedy and adequate remedy.' " This
language demonstrates clearly that there is a wide dis-
cretion in this court to accept original jurisdiction if
justice demands it, even though by paying a high price
review could be had on writ of error.

In *Carlson v. District Court,* 116 Colo. 330, 180 P. (2d)
525, we find the following:

"It is the author's opinion that no question of greater
'public importance' can arise than one in which a court
is proceeding without jurisdiction of the person or sub-
ject matter. In this opinion other members of the court
may not concur. However, where it is apparent that
under the circumstances here no judgment in favor of
the defendant in the court below could properly be
affirmed, we have determined that under circumstances
in line with the particular factual situation here pre-
sented, an order in the nature of a writ of prohibition
should be entertained."

Rule 116 R.C.P. Colo., which deals specifically with
the subject of the original jurisdiction of this court, is
inconsistent with Rule 106. Rule 116 provides that a
person seeking to invoke the original jurisdiction of this
court, "shall set forth in his complaint the circumstances
which render it necessary or proper that the supreme
court exercise its original jurisdiction." Such a com-
plaint was filed in this case, and a rule to show cause
issued. The rule further provides: "Relief in the nature
of prohibition will not be granted except in matters of

great public importance." Admittedly this is a matter of great public importance.

In *Jameson v. District Court,* 115 Colo. 298, 172 P. (2d) 449, we said, inter alia:

"Under Rule 116 of our civil procedure, we are not required to consider the question of venue upon such application, but, in view of the *importance of determining the question raised and of preventing the delay and expense of re-trial* in case the court where the cause is pending be found without jurisdiction, we elect to determine the question now." (Emphasis supplied.)

In the case before us we should exercise the same sound discretion which was used by the court in the case cited, in order to prevent delay, expense and unwarranted duplication of effort on the part of a very considerable number of distinguished members of the bar. We would not, by so doing, prevent the trial judge from finally disposing of the case. He would either be upheld in his ruling or would be instructed to dismiss the action for failure to state a claim.

We would not adjudicate the rights of parties not before us except as our decision might be controlling under the doctrine of stare decisis in the assertion of some claimed right. This happens every time a case is decided. A potential litigant finds that this court has decided the question applicable to his own controversy and thus his rights have been "adjudicated" although he was not a party.